WILLIAM LEA TAYLOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 89461. Promulgated May 17, 1938.

*Homer K. Jones, C. P. A.*, for the petitioner.
*Harry R. Horrow, Esq.*, for the respondent.

### OPINION.

HILL: This proceeding is for the redetermination of a deficiency in income tax for the calendar year 1934 in the sum of $1,102.74.

Petitioner assigned error as follows:

(a) The respondent erred in including in petitioner's income for the year 1934, the amount of $9,244.00 representing dividends from the William Lea Taylor Trust.

(b) The respondent erred in holding that the income of the William Lea Taylor Trust for the year 1934 is taxable to the petitioner.

All of the facts were stipulated, and included as a part of the stipulation was a written declaration of trust by petitioner, creating the William Lea Taylor trust, executed April 28, 1932, by petitioner, as grantor, and by him and the Bank of Commerce & Trust Co., a Tennessee corporation, as trustees.

We adopt the stipulated facts as our findings of fact and will refer to and quote only such of them as may appear necessary to our decision of the questions involved.

The questions presented are:

1. Is the income realized by the William Lea Taylor trust taxable to the petitioner, as grantor, under the provisions of sections 166 and 167 of the Revenue Act of 1934?

2. Did the petitioner retain such control over and benefit from the William Lea Taylor trust that he is taxable with respect to the income realized by the trust?

Petitioner is an individual, whose office address is 81 Monroe Avenue, Memphis, Tennessee. He duly filed his income tax return for the year 1934 with the collector of internal revenue at Nashville, Tennessee.

In determining the deficiency involved in this proceeding, the Commissioner of Internal Revenue included, in the taxable income of the petitioner, dividends received during the year 1934 by the William Lea Taylor trust in the amount of $9,244. Also, the Commissioner allowed as deductions from the gross income of petitioner the following amounts: $360 representing loss on the sale during 1934 of 200 shares of Union Compress and Warehouse preferred stock held by the trust, $458.25 representing taxes paid by the trust during that year, and $405.45 representing compensation paid to the trustees of the trust during the year 1934.

The petitioner contends that none of said income or deductions may be included or allowed in computing his taxable income for the year 1934.

The corpus of the trust during the taxable year consisted of insurance policies in the face amount of $240,000, taken out on the life of R. L. Taylor, father of petitioner, and certain shares of stock, owned by the petitioner, which were transferred by him to the trust at the time of its creation. The income of the trust during the taxable year consisted solely of dividends received on such shares. R. L. Taylor irrevocably assigned all his right, title, and interest in and to the insurance policies to the trust in 1932. By virtue of the provisions of the insurance policies the trustees of the trust have the power to surrender them and obtain their cash surrender value. The trustees of the trust, since its creation and throughout the taxable year in question, were the petitioner and the National Bank of Commerce & Trust Co. of Memphis, Tennessee, formerly the Bank of Commerce & Trust Co.

At the time the trust was created, the petitioner was 22 years old, his father, R. L. Taylor, was 60, and Sarah L. Taylor, his mother, was 58 years of age. Sarah L. Taylor died on April 9, 1936, during the lifetime of R. L. Taylor.

During the year 1934 all the income of the trust, consisting of $9,244 in dividends, was applied toward the payment of premiums on the insurance policies.

The trust instrument consists of article first and article second. Under article first it is provided:

2. The Trustees are hereby authorized, empowered and directed to receive the income from the trust property and to apply so much thereof as is necessary, less their compensation and the expenses of administering this trust, to pay the premiums on the life insurance policies assigned to them hereunder. If the net income shall at any time be insufficient for this purpose, the Trustees

shall, unless William L. Taylor elects to advance the money to make up the deficiency, make up such deficiency out of the principal of the trust fund, and for that purpose they are hereby given authority to pledge or sell so much of the principal as is necessary in their discretion. If the principal of the trust fund shall become so diminished that it is insufficient to pay the premiums on the policies subject to this trust, and if William L. Taylor does not elect to put up additional securities or advance additional funds for that purpose, the Trustees shall be relieved of all liability for paying the said premiums.

3. All income not expended for life insurance premiums hereunder and all dividends, proceeds of policies maturing during the lifetime of the insured, disability benefits, cash value and other amounts payable under any insurance contract hereunder received by the Trustees during the lifetime of R. L. Taylor and not needed to pay said premiums, shall be allowed to accumulate in the hands of the Trustees and become a part of the corpus of the trust estate.

4. The Trustees shall have precisely the same powers as though they were the absolute and unconditional owners of the property, and without in anywise limiting this generalization, they may:

(a) Buy any property, real, personal or mixed, on any terms or conditions whatsoever.

(b) Sell any property, real, personal or mixed, that now is or shall become a part of the within trust estate on any terms or conditions whatsoever and with or without security for such lending.

(c) Lend any money or property, real, personal or mixed that now is or shall become a part of the within trust estate on any terms or conditions whatsoever and with or without security for such lending.

(d) Exchange any property, real, personal or mixed, that now is or shall become a part of the within trust estate on any terms or conditions whatsoever. In the exercise of all of the powers conferred in Subdivision (a), (b), (c) and (d) above, the Bank of Commerce & Trust Company shall be governed by the advice of William L. Taylor, whose discretionary powers shall be controlling, and the Bank of Commerce & Trust Company, when acting under the advice of said William L. Taylor shall be relieved of all liability in regard thereto.

(e) Surrender any policies of insurance hereunder for their cash value.

(f) Borrow money under any terms or conditions whatsoever with or without pledging, mortgaging or encumbering any or all of the property, real, personal or mixed, that now is or shall become a part of the within trust estate.

(g) Lease any or all of the property, real, personal or mixed that now is or shall become a part of the within trust estate, under any terms of rental or for any duration of time whatsoever.

(h) May give away, in their discretion, any part of the trust estate when such donation shall be approved by the adult beneficiaries.

(i) If, at any time, there be a default in the payment of the interest or principal, or both, of any note, bond, account or other obligation or security held by said Trustees, or if the Trustees be a party plaintiff or defendant to a suit of any kind or nature, at law or equity, or before any legally constituted tribunal, the said Trustees shall exercise their bona fide judgment as to the proper legal proceedings necessary to enforce such claim or suit, or whether legal proceedings shall be taken at all, or whether an accord, compromise, renewal or any other method shall be taken in order to settle such claim or claims or suit; and when the Trustees shall exercise their bona fide judgment in the particular procedure adopted, such action shall not be open to review by any legal authority, court or body.

(j) Hold in unchanged form any securities forming a part of the trust estate.

(k) Purchase additional insurance on the life of R. L. Taylor, if they deem it advisable to do so.

(l) The Trustees may sell or exercise any subscription warrants and may sell or retain any stock dividends, and all stock or proceeds of sale so acquired shall be held by the Trustees as principal and dealt with accordingly; but if, in the judgment of the Trustees, any stock dividend is declared in lieu of an ordinary cash dividend, the Trustees shall have full power and authority to treat either the dividend or the proceeds of sale thereof as income. Investments may stand in the name of any firm acting as agent for the Trustees.

  *    *    *    *    *    *    *

9. After the death of R. L. Taylor, the Trustees shall collect the proceeds of life insurance policies hereunder and shall add the same to the principal of the trust fund. The Trustees, however, shall not be bound to institute any legal proceedings for the collection of the proceeds of any insurance policy hereunder unless the expenses for such legal action shall be first advanced to the Trustees. * * *

  *    *    *    *    *    *    *

Under article second it is provided:

11. After the death of R. L. Taylor, the Trustees shall collect the proceeds of all life insurance policies, and shall pay over the net income from the trust estate to William L. Taylor and his mother, Sarah L. Taylor, in equal shares, such payments to continue during the lifetime of Sarah L. Taylor.

During the continuation of the trust herein declared, the Trustees, in their sole discretion, are authorized and empowered to encroach on the corpus of the trust estate in the event of the serious illness or other misfortune of either or both of said beneficiaries.

At the death of Sarah L. Taylor, the entire net income from the trust estate shall be paid to William L. Taylor. At any time after two years following the death of Sarah L. Taylor, William L. Taylor shall have the right and authority of electing to receive the entire trust estate, both principal and income, and upon the said William L. Taylor exercising such right, the Trustees shall deliver to him the entire trust estate, both principal and income, and the trust shall cease and determine.

  *    *    *    *    *    *    *

The trust instrument provides that if petitioner predeceases his mother, leaving no wife, child, or children, the trust estate shall become the property of certain named persons at her death.

Other provisions of the trust instrument directs the disposition of the trust property in the event petitioner shall predecease his mother, leaving a wife and/or child or children. Such further provisions are not important in the determination of the question presented for decision.

The Commissioner, in his explanatory statement accompanying the notice of deficiency, stated: "There has been included in your income, dividends reported by the William Lea Taylor Trust. This office is of the opinion that the income of the trust is taxable to you, the grantor, since under the provisions of the trust department, you did

not permanently and unconditionally divest yourself of the corpus of the trust."

Respondent based his determination of deficiency on sections 166 and 167 of the Revenue Act of 1934 and articles 166–1 (b) and 167–1 (b) of Regulations 86. We deem it necessary, however, to consider only the applicability of section 167 (a) (1),[1] *supra*, to the provisions of the trust instrument. We believe that the trust involved falls within the provisions of that section and that the issue presented must be resolved against the petitioner.

The operation of the trust was divided into two periods. The first period, under article first of the trust instrument, was conterminous with the life of R. L. Taylor. The second period, under article second of the trust instrument, was from and after R. L. Taylor's death. During the first period the income of the trust was not distributable, but was to be used to pay premiums on the policies of insurance on the life of R. L. Taylor, and the excess, if any, together with any proceeds received by the trustees under any insurance contract during the life of R. L. Taylor, was to be added to the corpus of the trust. If such income should be insufficient to pay the premiums, the trustees were authorized to pay the deficit out of the corpus of the trust, unless petitioner elected to advance the money to make up such deficiency. During the second period the proceeds of any existing insurance policies on the life of R. L. Taylor were to be collected and added to the corpus of the trust, and the net income from the trust was to be distributed in equal shares to the petitioner and his mother, Sarah L. Taylor, so long as both should live. If petitioner should survive his mother he was to receive the entire net income of the trust from and after the death of his mother, and he had the right at any time after two years following her death to terminate the trust and thereupon receive both the principal and income of the trust. If Sarah L. Taylor should survive petitioner, she was to receive the entire income of the trust during her life, provided petitioner left surviving no child, children, or wife; otherwise, she was to continue to receive one-half of the income during her life.

Under paragraph 2 of the trust instrument the trustees were directed to apply the income of the trust first to the payment of their compensation and the expenses of administering the trust. They

---

[1] SEC. 167. INCOME FOR BENEFIT OF GRANTOR.

(a) Where any part of the income of a trust—

(1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor; * * *

* * * * * * *

then such part of the income of the trust shall be included in computing the net income of the grantor.

were directed to use the remainder of the income, called the net income, or so much thereof as should be necessary, in payment of premiums on the policies of insurance held by the trust on the life of R. L. Taylor. Paragraph 3 of the trust instrument is as follows:

All income not expended for life insurance premiums hereunder and all dividends, proceeds of policies maturing during the lifetime of the insured, disability benefits, cash value and other amounts payable under any insurance contract hereunder received by the Trustees during the lifetime of R. L. Taylor and not needed to pay said premiums, shall be allowed to accumulate in the hands of the Trustees and become a part of the corpus of the trust estate.

Paragraph 4 provides that the trustees shall have "precisely the same powers as though they were the absolute and unconditional owners of the property" of the trust, and paragraph 4 (e) authorized them to "surrender any policies of insurance hereunder for their cash value."

The trustees had the power, through surrendering any or all of the insurance policies for their cash value, to reduce the amount of premiums to be paid out of the income of the trust or to eliminate entirely such premiums. But whether the net income be used in the payment of such insurance premiums, or merely added to the corpus of the trust, or otherwise withheld from distribution, it would be an accumulation of the income. Any disposition thereof other than its distribution to beneficiaries of the trust is an accumulation of the income. The payment of insurance premiums out of the income is but an investment in trust property. The application of the income to such payment is to add it to the corpus of the trust and hence to accumulate it.

It follows that during the first period of operation of the trust, namely, during the lifetime of R. L. Taylor, all of the net income of the trust was to be accumulated and added to the corpus of the trust. The question, then, is, Was the accumulated income in the discretion of the grantor (petitioner) to be distributed to the grantor in the future?

If the corpus of the trust, including the accumulated income, may in the future, in the discretion of the grantor, be distributed to him, the trust falls within the provisions of section 167 (a) (1), *supra*. *Fanny M. Dravo et al., Executors*, 34 B. T. A. 190; *Arthur J. Morris*, 33 B. T. A. 241. Cf. *Kaplan* v. *Commissioner*, 66 Fed. (2d) 401, construing section 219 (h) of the Revenue Act of 1924; *Greenough* v. *Commissioner*, 74 Fed. (2d) 25; *Higgins* v. *White*, 93 Fed. (2d) 359.

In paragraph 9 of the trust instrument it is provided that "after the death of R. L. Taylor, the trustees shall collect the proceeds of life insurance policies hereunder and shall add the same to the principal of the trust fund."

In paragraph 11 of the trust instrument it is provided that after the death of R. L. Taylor the net income from the trust estate shall be paid in equal shares to petitioner and his mother, Sarah L. Taylor, during the latter's lifetime, and at her death the entire net income shall be paid to petitioner. It is further provided in paragraph 11 as follows: "At any time after two years following the death of Sarah L. Taylor, William L. Taylor [petitioner] shall have the right and authority of electing to receive the entire trust estate, both principal and income, and, upon the said William L. Taylor exercising such right, the trustee shall deliver to him the entire trust estate, both principal and income, and the trust shall cease and determine."

The trust instrument, therefore, definitely provides for the accumulation of all of the net income of the trust during the lifetime of R. L. Taylor and also definitely provides that in the discretion of the grantor such accumulated income may be distributed in the future to him. Thus, the trust is brought squarely within the provisions of section 167 (a) (1), *supra*.

*Decision will be entered for the respondent.*